UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TYRONE COLE, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     *vs.* | ) | 1:08-cv-01635-JMS-LJM |
| | ) | |
| MICHAEL ASTRUE, Commissioner of Social Security, | ) ) | |
|     *Defendant*. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff, Tyrone Cole, applied for Supplemental Security Income ("SSI") disability benefits through the Social Security Administration in May 2005. [R. 16.][1] After a series of administrative proceedings and appeals, including a hearing in February 2008 before Administrative Law Judge ("ALJ") John Metz, the agency finally denied his application. He then filed this action for judicial review of that denial.

### BACKGROUND[2]

Mr. Cole, now 47, filed an application for SSI benefits claiming that his back pain has rendered him disabled since 2002. [R. 167.] Based upon the medical records that he submitted to Social Security Administration, his first trip to the doctor for that condition occurred in April 2005. [R. 213.] Those records indicate recurring complaints of back pain. [*See, e.g.*, *id*.] His treating physician, Dr. Tierney, determined that Mr. Cole had a herniated disk, together with

---

[1] Upon the written consent of the parties, this matter has been assigned to the magistrate judge for all proceedings, including for the entry of judgment, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Dkt. 27.]

[2] Mr. Cole's decision to forgo including a Statement of Facts in his brief needlessly complicated the Court's review in this matter. Had Mr. Cole prevailed here, the Court would have taken counsel's failure into account when reviewing the appropriateness of a fee petition. *See* 28 U.S.C. § 2412(d)(1)(C) (permitting a reduction of fees if a Plaintiff "unreasonably protracted the final resolution").

1

diagnoses of obesity and hypertension. [*Id*.; R. 227.] For the back pain, Dr. Tierney originally prescribed pain medication, in April 2005, while noting that Mr. Cole appeared to exaggerate the severity of that pain. [R. 213. *See also* R. 82 (June 2005 note from Dr. Tierney again finding Mr. Cole's claims of pain exaggerated).] Later, in August 2006, Mr. Cole developed right shoulder pain. [*See* R. 50.] The ALJ determined, and Mr. Cole hasn't disputed here, that Dr. Tierney's treatment of Mr. Cole's complaints of disabling pain was "routine and/or conservative in nature," and that that treatment stopped seven months before Mr. Cole's February 2008 hearing. [R. 22.] The treatment included pain medication, which was altered in November 2005 because of Mr. Cole's complaints of feeling "high." [R. 84.]

The record contains opinions from four physicians about the extent to which Mr. Cole's medical condition limits his ability to engage in daily, work-related activities. The first is from Dr. Tierney, authored in April 2005 in connection with Mr. Cole's application for food stamps. There, Dr. Tierney wrote that Mr. Cole could only sit for two-to-three hours at a time, could only stand and walk for thirty minutes at a time, could lift no more than ten pounds infrequently, could push and pull no more than ten pounds infrequently, and could not bend. [R. 227.] In contrast, Dr. Landwehr and Dr. Dobson, two state reviewing physicians, indicated the need for fewer restrictions on their Physical Residual Functional Capacity Assessment form. They concluded that Mr. Cole could occasionally lift fifty pounds, and frequently lift twenty-five pounds; that he could stand and walk, or sit, for six hours in a workday; and that he his abilities to push and pull were not otherwise limited. [R. 188.] Finally, Dr. Budzenski, a state examining physician, determined that Mr. Cole should not lift more than fifty pounds at a time, but otherwise needed no workplace restrictions. [R. 199.]

2

After considering the medical evidence and Mr. Cole's testimony about the extent of his symptoms, the ALJ—in an opinion far more lengthy than those normally reviewed by the Court—generally concurred with the limitations that Dr. Landwehr and Dr. Dobson determined. [*See* R. 19.] The ALJ only disagreed with them to the extent that they believed Mr. Cole had an unlimited ability to perform postural functions. Thus, the ALJ found instead that Mr. Cole should only occasionally bend, stop, kneel, balance, and climb stairs; and that he should never climb ladders, ropes, or scaffolds or otherwise be exposed to unprotected heights. [*Id.*] Based on the limitations that the ALJ found that Mr. Cole had, a vocational expert testified that Mr. Cole could still perform several types of sedentary jobs, including that of assembler, pari-mutuel ticket checker, and telephone quotation clerk. [R. 25.] Accordingly, the ALJ denied Mr. Cole's SSI disability application.

## DISCUSSION

This Court's role in this action is limited to ensuring that "the ALJ applied the correct legal standard, and [that] substantial evidence supports the decision." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purposes of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), the Court must afford the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted). If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. Otherwise the Court must generally remand the matter back to the Social Security Administration for further

3

consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

> To evaluate a disability claim, an ALJ must use the following five-step inquiry:
>
> (1) [is] the claimant … currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment … one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, …can [he] perform h[is] past relevant work, and (5) is the claimant … capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted).

Mr. Cole claims that the ALJ erred at Step Three and when the ALJ computed his residual functional capacity ("RFC"), a determination necessary to Steps Four and Five.

### A. Step Three

At Step Three, the ALJ must consider whether a disability applicant has one or more conditions that the Social Security Administration considers conclusively disabling. Those conditions, so-called "Listed Impairments," are set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. Even if a disability application does not satisfy the requirements of a particular listing, the applicant will still be considered disabled if the applicant can demonstrate "medical equivalence"—in other words, that the applicant has symptoms at least as serious as, and has had them for at least as long as, the criteria set forth in the Listed Impairments. *See* 20 C.F.R. § 404.1525(c)(5) ("If your impairment(s) does not meet the criteria of a listing, it can medically equal the criteria of a listing."); *id.* § 404.1526 (setting forth standards for determining medical equivalence).

Here, Mr. Cole doesn't challenge the ALJ finding that Mr. Cole failed to meet any Listed Impairments. [*See* dkt. 23 at 16.] Instead, Mr. Cole argues that the ALJ should have summoned a medical expert to opine about possible medical equivalence for two reasons. [*Id.*]

4

First, he claims that there is no medical opinion in the record about medical equivalence, as is required, 20 C.F.R. § 416.926(b). [*See* dkt. 23 at 16.] As the Commissioner correctly points out in response, however, Mr. Cole simply missed the signed opinion from Dr. Landwehr about a lack of medical equivalence contained on the Disability Determination and Transmittal Form [R. 118]. When, as here, such a form is signed and included in the record, the form "ensures that consideration by a physician…has been given to the question of medical equivalence," SSR 96-6p.

Second, Mr. Cole argues that a medical expert was necessary given the additional medical records that Mr. Cole submitted to the ALJ shortly before the hearing, [R. 116], records that post-dated Dr. Landwehr's and Dr. Dobson's original review of Mr. Cole's file in 2005 [*id.*; R. 187-94].[3] [*See* dkt. 23 at 16-17.] But an ALJ only must summon a medical expert when the ALJ receives "additional medical evidence…that in the opinion of the administrative law judge…may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p. While Mr. Cole has asserted that the additional records should have influenced the ALJ's "opinion" about possible non-medical equivalence, he has failed to identify which particular record(s) the ALJ improperly disregarded, much less shown how those records should have influenced the ALJ's decision. [*See* dkt. 23 at 16-17.] As a result, Mr. Cole has not presented any cogent argument that the ALJ erred in finding that the records didn't merit a medical expert at the hearing, thereby waiving the claim; the Court will not develop arguments for parties. *See Smith v. Eaton*, 910 F.2d 1469, 1470 (7th Cir. 1990) ("Especially now, when the court system is burdened to capacity, and when judicial resources are stretched to the very limit,

---

[3] The records would also post-date Dr. Budzenski's physical examination of Mr. Cole in 2005. [R. 199.]

5

our fiduciary duty to the institution we serve and to all the litigants who come before us requires that we be vigilant in enforcing the bar's responsibility to present issues clearly and comprehensively." (footnote omitted)).

The Court finds no error at Step Three.

### B. Determining the RFC

An ALJ must determine a claimant's RFC—the claimant's physical and mental abilities considering all the claimant's impairments—which the ALJ uses at Step Four to determine whether the claimant can perform his own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e). Here, Mr. Cole assigns three errors to the way that the ALJ computed his RFC. He claims (1) that the ALJ incorrectly assessed his credibility; (2) that the ALJ impermissibly failed to include limitations arising from the side effects of his medications; and (3) that the ALJ failed to conduct the required function-by-function RFC determination. The Court addresses each of those issues in turn.

#### 1. The ALJ's Assessment of Mr. Cole's Credibility

Mr. Cole's brief presents a lengthy and broad overview of the law governing how ALJs must evaluate the credibility of disability claimants. [*See* dkt. 23 at 13-15]. Nonetheless, the error that Mr. Cole ultimately assigns to the ALJ's credibility determination is a narrow one. It concerns the ALJ's obligation—at every stage of the disability-determination inquiry—to confront evidence inconsistent with the ALJ's findings. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) ("An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. An ALJ's failure to consider an entire line of

6

evidence falls below the minimal level of articulation required." (citations omitted)). Mr. Cole claims that the ALJ erred in finding him not fully credible because the ALJ made that finding without acknowledging the Physical Residual Functional Capacity Assessment that Dr. Landwehr and Dr. Dobson, the state reviewing physicians, submitted. [Dkt. 23 at 13.] There, they jointly opined that "[t]he claimant's allegations and contentions regarding the nature and severity of the impairment related symptoms, as well as the functional limitations imposed by these symptoms are found to be fully credible because they are reasonably well supported by appropriate medical findings and are not inconsistent with the overall evidence in [the] file." [R. 192.]

To properly evaluate Mr. Cole's claim, it is important to note the significant qualification that Dr. Landwehr and Dr. Dobson placed on their comment, one which Mr. Cole fails to mention. Their comment concerned only "symptoms alleged by the claimant to produce physical limitations, and for which [those symptoms] have not been addressed in section I [above in their assessment]." [*Id.*] In Section I, they determined that Mr. Cole could occasionally lift/carry fifty pounds and frequently lift/carry twenty-five pounds; that Mr. Cole could stand/walk and sit, all "with normal breaks," for six hours in an eight-hour workday; and that he had no push/pull, postural, manipulative, visual, communicative, or environmental limitations. [R. 188-191.] With the exception of postural limitations—which the ALJ determined were required even though Dr. Landwehr and Dr. Dobson determined were not—the ALJ's RFC concurred with those findings. [*See* R. 19.] Thus, the credibility disagreement between the ALJ and Dr. Landwehr/Dr. Dobson must concern Mr. Cole's claims about some other RFC limitation than those that the ALJ found.

7

Mr. Cole doesn't say what additional RFC limitation the ALJ should have imposed had the ALJ agreed with Dr. Landwehr's and Dr. Dobson's catchall "credibility" assessment. But to possibly secure a remand, he needed to have done just that; otherwise the error, if any, is harmless. *Cf. Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004) (refusing to remand where the petitioner failed to explain how the ALJ's RFC determination would have changed if the ALJ had explicitly considered the claimant's obesity); *Keys v. Barnhart*, 347 F.3d 990, 995 (7th Cir. 2003) (explaining that harmless-error analysis applies in the Social Security context). Accordingly, the Court finds no reversible error over the ALJ's credibility determination arising from the ALJ's failure to explicitly mention Dr. Landwehr's and Dr. Dobson's catchall credibility determination.

### 2. The Side Effects from Mr. Cole's Medications

The parties agree that if, as Mr. Cole testified, his medication makes him feel "spaced out," [R. 246], then ALJ should have accounted for that fact when computing Mr. Cole's RFC. [*Compare* dkt. 23 at 7, *with* dkt. 26 at 22.] *See also* SSR 03-02p ("When evaluating duration and severity, as well as when evaluating RFC, the effects of chronic pain and the use of pain medications must be carefully considered."). The ALJ didn't include such a limitation, however, because he disbelieved Mr. Cole's testimony about the existence of the side effects. [R. 23 (finding "no evidence of significantly limiting side effects with regard to his medications").]

When an ALJ evaluates the claimant's testimony regarding his symptoms, the ALJ must undertake a two-step process. First, the ALJ must determine whether the claimant has presented objective medical evidence regarding the existence of a condition that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. § 416.929(b). Second, the ALJ must then

weigh the claimant's testimony about the extent of those symptoms against all the other evidence available on the topic. *See id.* § 416.929(c).

Here, despite medical records that describe Mr. Cole as "alert" and "oriented" [R. 73, 85], Mr. Cole's physician decided in November 2005 to change Mr. Cole's pain medications because of complaints that the medications were making him feel "high." [R. 86.] Thereafter, in the approximately next two years' worth of his medical records, Mr. Cole's records are silent as to similar complaints about feeling "high." [*See* R. 86-100.] Based upon that change in prescription, the ALJ found "no evidence of significantly limiting side effects with regard to his medications." [R. 23.]

Given the limited nature of the applicable standard of review, the lack of medical documentation of continued debilitating side effects, and the ALJ's opportunity to observe Mr. Cole firsthand at the hearing, the Court cannot say that the ALJ erred in determining that Mr. Cole's new medical regime was inconsistent with Mr. Cole's continued claims of severe side effects. *See Nelson v. Secretary of Health & Human Services*, 770 F.2d 682, 685 (7th Cir. 1985) (holding that ALJ could disbelieve testimony regarding side effects of medication that were not substantiated by any objective evidence), *overruled on other grounds as stated in Allen v. Smith*, 977 F.2d 385 (7th Cir. 1992).

Because the ALJ found that Mr. Cole no longer suffered the side effects that he claimed to suffer, the ALJ wasn't required to include them in Mr. Cole's RFC.

### 3. Function-by-Function Discussion

When determining an individual's RFC, the ALJ "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545…."

SSR 96-8p. Mr. Cole argues that the ALJ's RFC determination fails to satisfy that requirement because the ALJ failed to specifically discuss reaching, pushing, pulling, and handling, which are among the limitations set forth in 20 C.F.R. § 404.1545(b). [Dkt. 23 at 8-11.]

Because the ALJ need only discuss "limitations or restrictions," the ALJ need not engage in a function-by-function discussion of activities for which no impairment is present. *Zatz v. Astrue*, 2009 U.S. App. LEXIS 21915, *11-12 (7th Cir. 2009) (per curiam) ("[A]n ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence."). Thus, for example, Mr. Cole assigns no error to the ALJ's failure to explicitly address several other limitations mentioned 20 CFR § 404.1545, including epilepsy and blindness, *id.* at § 404.1545(d), limitations which Mr. Cole doesn't claim to suffer.

When Mr. Cole submitted his disability application, he listed the impairments that he claims preclude him from working. [*See* R. 167.] The ALJ also asked him during his hearing about his limitations [*see* R. 246-55], and his attorney likewise elicited testimony from him about his limitations [*see* R. 256-257]. Despite his multiple opportunities to set forth the limitations that he wished the ALJ to consider, Mr. Cole failed to complain about any difficulties reaching, pushing, pulling, and handling. That failure undermines any criticism that the ALJ failed to address those same difficulties, particularly where Mr. Cole explicitly denied having them at the hearing. [R. 249 (testifying that he can pick up coins with his fingers and grasp objects with no difficulties).]

The Commissioner's response brief challenged Mr. Cole to "point to any evidence in the record that indicated that [Mr. Cole] had difficulty reaching, pushing, pulling, or handling

objects." [R. 26 at 14.] By electing to file no reply brief, Mr. Cole left that challenge unanswered.[4]

Drs. Landwher and Dobson determined that Mr. Cole had an unlimited ability to push and pull (besides lifting restrictions) and had unlimited abilities to reach and handle objects. [R. 188.] Dr. Budzenski, who conducted an internal medical exam on Mr. Cole for the Commissioner, likewise found that, other than a lifting restriction, "there are no physical findings on today's examination that would suggest the need for work place [sic] restrictions." [R. 199.] Relying upon those medical findings and upon Mr. Cole's testimony about his limitations—and lack thereof—the ALJ appropriately found that Mr. Cole had no difficulties reaching, pushing, pulling, and handling. The ALJ was not, therefore, required to include, much less discuss, any such limitations in Mr. Cole's RFC.

## CONCLUSION

Although Mr. Cole has raised several challenges to the ALJ's decision, the Court finds that those challenges have no merit given the limited standard of review that the Court must apply here. Accordingly, the Court **AFFIRMS** the Commissioner's decision denying Mr. Cole SSI benefits. Judgment will be entered accordingly.

12/30/2009

                                                Jane Magnus-Stinson
                                                United States Magistrate Judge
                                                Southern District of Indiana

---

[4] The Court notes that while that Dr. Tierney's 2005, authored in connection with Mr. Cole's food-stamp application, finds limitations in pushing and pulling among others, [R. 227], the ALJ explained at length why he rejected Dr. Tierney's report in its entirety [R. 23]. Mr. Cole hasn't argued here that the ALJ erred in rejecting that report.

**Distribution via ECF:**

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
tom.kieper@usdoj.gov